UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAGJEEVAN D.S.,[1] | |
| Petitioner, | No. 1:26-CV-00036-TLN-CKD |
| v. | **ORDER** |
| SERGIO ALBARRAN, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Jagjeevan D.S.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) Respondents filed an opposition. (ECF No. 7.) Petitioner replied. (ECF No. 8.) The parties consented to converting the motion for TRO into a motion for preliminary injunction without further briefing and without a hearing. (ECF Nos. 7, 8.) For the reasons set forth below, Petitioner's Motion is GRANTED and the Court issues a preliminary injunction.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

### I.  FACTUAL BACKGROUND[2]

Petitioner is a native and citizen of India. (ECF No. 2-2 at 7.) Petitioner came to the United States in April 2023 and he sought asylum. (*Id.*) He was detained by immigration authorities and then released on his own recognizance under 8 U.S.C. § 1226. (*Id.*; ECF Nos. 2 at 11; 7 at 2 n.2.)

On April 12, 2024, an immigration judge denied Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture, and ordered him removed from the United States. (ECF No. 2-2 at 7.) Petitioner timely appealed the order of removal to the Board of Immigration Appeals, where it is currently pending. (*Id.*) Petitioner's removal order is automatically stayed pending the outcome of his appeal. (ECF No. 7 at 1 n.1.)

Since his release from immigration detention, Petitioner complied with all check-ins with U.S. Immigration and Customs Enforcement ("ICE"). (ECF No. 2-2 at 7.) Nevertheless, at an ICE check-in on December 10, 2025, Petitioner was detained without notice or hearing. (*See id.*) Petitioner has now been detained for nearly a month without a hearing. (*Id.* at 21.)

Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*See* ECF Nos. 1, 2.)

### II.  STANDARD OF LAW

A preliminary injunction is an extraordinary remedy. Courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there

---

[2]  This factual background is taken largely verbatim from Petitioner's brief in support of his motion for TRO. (ECF No. 2). Respondents did not contest these facts. (ECF No. 7.)

2

are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction. *Id.* at 1134–35.

### III. ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

#### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claims that his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.[3] The Court discusses each claim in turn.

##### i. Violation of the INA

Petitioner has established a likelihood of success on his claim that his detention is unlawful under the INA. (ECF No. 2-2 at 14–21.) Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination. *Id.* It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.

Conversely, 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.

Parties agree that Petitioner was released by immigration authorities in 2023 under § 1226(a). (ECF Nos. 2-2 at 21; 7 at 2 n.2.) While Petitioner asserts that § 1226(a) should

---

[3] Petitioner claims his arrest and continued detention violates both substantive and procedural due process. (ECF No. 1 at 19–20.) Because Petitioner has established a likelihood of success on his statutory and procedural due process claims sufficient to warrant the requested relief, the Court declines to address additional cumulative claims.

1  continue to control (ECF No. 2-2 at 21), Respondents have since changed their legal position and
2  now assert that § 1225(b)(2) governs Petitioner's detention, which they say is mandatory.  (*See*
3  ECF No. 7 at 1.)  The Court agrees with Petitioner.

4       As this Court, and many others, have repeatedly found: § 1225(b)(2) applies only to
5  "applicants for admission" "seeking admission" — a category that does not include noncitizens
6  like Petitioner who were detained within the United States.  *See Morales-Flores v. Lyons*, No.
7  1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this
8  Court's reasons for taking this position).  Moreover, Petitioner was released under § 1226(a) and
9  Respondents have not meaningfully explained why Petitioner should now be subject to a separate
10 detention statute.  This Court has made its position on this statutory question clear, and
11 Respondents concede that this case is not substantively distinguishable from this Court's prior
12 rulings.  (ECF No. 7 at 2 n.2.)  Absent new argument, case law, or distinguishable facts, this
13 Court will not reconsider its position.

14      Thus, Petitioner is not an applicant for admission subject to mandatory detention under
15 § 1225(b)(2).  Petitioner is instead subject to § 1226(a) and is entitled to the process that statute
16 requires, including a bond hearing at a minimum.  Yet, Respondents have not provided any
17 hearing to Petitioner either pre- or post-detention.  Accordingly, Petitioner is likely to succeed on
18 the merits of his claim that Respondents have violated the INA and improperly subjected him to
19 mandatory detention without a hearing.

20                *ii.  Violation of Procedural Due Process*

21      The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or
22 property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d
23 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of
24 the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).
25 These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

26      Courts examine procedural due process claims in two steps: the first asks whether there
27 exists a protected liberty interest under the Due Process Clause, and the second examines the
28 procedures necessary to ensure any deprivation of that protected liberty interest accords with the

1  Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);
2  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,
3  the question remains what process is due.").

                                                         *a)*      *Liberty Interest*

5  As for the first step, the Court finds Petitioner has established a protectable liberty
6  interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.
7  Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by
8  statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he
9  government's decision to release an individual from custody creates 'an implicit promise,' upon
10 which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to
11 the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,
12 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a
13 noncitizen released from custody pending removal proceedings has a protected liberty interest in
14 remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL
15 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional
16 release rises to the level of a protected liberty interest, courts have "compar[ed] the specific
17 conditional release in the case before them with the liberty interest in parole as characterized by
18 *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.
19 Cal. Sept 9, 2025).

20 Here, Petitioner gained a liberty interest in his continued freedom after he was released
21 from custody in 2023. Under *Morrisey*, this release implied a promise that he would not be re-
22 detained, during the pendency of his immigration proceedings, if he abided by the terms of his
23 release. For over two and a half years, Petitioner asserts he complied with ICE check-ins (ECF
24 No. 2-2 at 7) and Respondents do not dispute that Petitioner complied with the conditions of his
25 release (*see* ECF No. 7). Further, Respondents do not assert he violated any laws or has a
26 criminal history. (*Id.*) During the period of his release, Petitioner built a life in the United States
27 as part of a community. (ECF No. 2-2 at 7.) As this Court has found previously, along with
28 many other courts in this district when confronted with similar circumstances, Petitioner has a

clear interest in his continued freedom as he awaits the outcome of his immigration proceedings, including his pending appeal. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondents argue that ICE has the authority to unilaterally extinguish Petitioner's liberty interest "at any time in its discretion." (ECF No. 7 at 1.) But such a finding would render the Fifth Amendment Due Process Clause meaningless. Even if Petitioner's liberty can be revoked under a grant of discretionary authority, Respondents still must follow constitutionally compliant process in doing so. As Petitioner points out on reply (ECF No. 8 at 3), that process includes, at minimum, individualized custody determinations, as afforded by § 1226(a), and further discussed below.

### b)   *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody for over two and a half years and built a life as part of his community. Despite that, Petitioner has now been detained without any notice or opportunity to be heard. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Petitioner asserts that he complied with the conditions of his release. (ECF No. 2-2 at 7.) Indeed, Petitioner's compliance led to his detention as he was

arrested at a routine ICE check-in. (*Id.*) Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's immigration appeal is ongoing, and his removal order is stayed. (ECF No. 7 at 1 n.1.) Additionally, before releasing him in 2023, immigration authorities would have found that Petitioner was not a danger to the community, nor a flight risk, and Respondents do not argue any facts to alter such a finding. As stated above, Petitioner complied with the conditions of his release, thus, he was not a flight risk. Therefore, on this record, the Court cannot find any legitimate interest for Respondents to detain Petitioner at this stage.

Moreover, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to

1 notice and hearing to determine whether detention was warranted. Respondents did not provide
2 either. Accordingly, with respect to his procedural due process claim, Petitioner has shown he is
3 likely to succeed on the merits.

                B.      Irreparable Harm

5      Petitioner has also established he will suffer irreparable harm in the absence of a
6 preliminary injunction. The Ninth Circuit recognizes "irreparable harms imposed on anyone
7 subject to immigration detention," including "subpar medical and psychiatric care in ICE
8 detention facilities, the economic burdens imposed on detainees and their families as a result of
9 detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is
10 present here. Without relief, Petitioner faces the prospect of significant additional time in
11 detention and continued harm while he awaits a decision on his immigration case. Moreover,
12 "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes
13 irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v.
14 Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

                C.      Balance of Equities and Public Interest

16      As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the
17 balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F.
18 Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092
19 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities
20 tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed
21 in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S.
22 Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public
23 interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.
24 Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention
25 are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June
26 14, 2025) (internal citation omitted). Any burden imposed by requiring Respondents to release
27 Petitioner from unlawful custody and refrain from re-detention unless and until they comply with
28 constitutionally required process is both *de minimis* and clearly outweighed by the substantial

1 harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in
2 Petitioner's favor.
3       Therefore, the Court GRANTS Petitioner's motion, issues the preliminary injunction set
4 forth below, and orders Petitioner's immediate release on the same terms as he was released prior
5 to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11
6 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the
7 pending controversy.").

### IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2), converted to a motion for preliminary injunction, is GRANTED.
2. Respondents must IMMEDIATELY RELEASE Petitioner JAGJEEVAN D.S. from custody under the same conditions as he was released prior to his current detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.
3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.
4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).
5. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initials.
6. This matter is referred back to the United States Magistrate Judge for further proceedings.

9

1  IT IS SO ORDERED.

2  Date: January 9, 2026

3  _____
TROY L. NUNLEY
4  CHIEF UNITED STATES DISTRICT JUDGE